**MERCURY INVESTMENT CO.**

v.

**A. G. EDWARDS & SONS and A. B. Alkek, Jr.**

**Civ. A. No. 67–H–853.**

United States District Court
S. D. Texas,
Houston Division.

Jan. 27, 1969.

Frank Pinedo, Houston, Tex., for plaintiff.

Ben G. Sewell, Houston, Tex., for defendant A. G. Edwards & Sons.

R. F. Wheless, Jr., Barrow, Bland & Rehmet, Houston, Tex., for defendant A. B. Alkek, Jr.

### Memorandum and Order

SINGLETON, District Judge.

Plaintiff, a customer of A. G. Edwards & Sons (hereinafter referred to as "Edwards"), a brokerage firm dealing in securities, has brought this action against that firm and A. B. Alkek, Jr., its employee, to recover damages for alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U. S.C. § 78j(b) ); Securities Exchange Commission Rule 10b–5 (17 C.F.R. 240.-10b–5); Art. III, sec. 2 of the Rules of the National Association of Securities Dealers (N.A.S.D.); Section 33 of the Texas Securities Act; Art. 4004 Texas Revised Civil Statutes and the common law of the State of Texas.

The case is now before the Court on defendant Edwards' motion to dismiss certain portions of plaintiff's complaint for failure to state a claim upon which relief can be granted. Defendant seeks the dismissal of that part of plaintiff's complaint which is predicated on a violation of Section 2, Article III, of the Rules of Fair Practice of N.A.S.D. Defendant contends that the allegation of a violation of an N.A.S.D. rule by an N.A.S.D. member does not state a federal claim upon which relief can be granted. The N.A.S.D. is a private securities dealers association which enforces rules which it promulgates through disciplinary proceedings. Thus, contends defendant, citing Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2d Cir. 1966), a violation of such a dealer association rule by a member does not give rise to an implied federal civil liability.

If the problem confronting the Court were as simple as defendant contends, there would be little need for this opinion. A reference to the *Colonial* case would be sufficient. However, *Colonial* (the *only* case cited to the Court by either party) does not lend weight to the simplistic approach urged by defendant. *Colonial* dealt with one particular rule of the dealer's association and held that it did not give rise to federal civil liability. A different rule is involved in this case.

*Colonial* did not issue a blanket holding that such dealer rules could never give rise to federal civil liability. It did attempt to establish certain criteria for determining whether a particular rule gives rise to such liability.

The Court in *Colonial* said:

"We start from the proposition that the judicial recognition and enforcement of a private remedy not expressly afforded by the Securities Exchange Act is predicated on the duty of the courts 'to make effective the congressional purpose' represented in 'the statute and the federal policy which it has adopted.' * * * Implication of a private right of action may be suggested by explicit statutory condemnation of certain conduct and a general grant of jurisdiction to enforce liabilities created by the statute, * * * or from such considerations as the protection intended by the legislature and the ineffectiveness of existing remedies, administrative and judicial, fully to achieve that end. * * * *Whether such a claim can be maintained for violation of stock exchange rules is a thorny problem because the effect and significance of particular rules may vary with the manner of their adoption and their relationship to provisions and purposes of the statute and SEC regulations thereunder* * * *.

\* \* \* \* \* \*

"[W]hether the courts are to imply federal civil liability for violation of exchange or dealer association rules by a member cannot be determined on the simplistic all-or-nothing basis urged by the two parties; rather, the court must look to the *nature of the particular rule* and *its place in the regulatory scheme,* with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation. The case for implication would be strongest when the rule imposes an explicit duty unknown to the common law." Colonial Realty Corp. v. Bache & Co., supra, at 181–182. (Emphasis added.)

The N.A.S.D. rule in question in the present case is the so-called "suitability" rule. (Art. III, Sec. 2). It provides as follows:

"In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable ground for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs."

Plaintiff contends that since this rule "imposes an explicit duty unknown to the common law" it meets the *Colonial* criteria. Plaintiff fails to recognize

that initially *Colonial* requires the Court to determine if the N.A.S.D. rule is consistent with the federal regulatory scheme. See Hecht v. Harris, Upham & Co., 283 F.Supp. 417, 430 (N.D.Cal. 1968).

"On this point we merely note that the Security Acts * * * are essentially directed at *fraud*—not against mere negligence or errors of judgment on the part of the broker. Although an agent must exercise the degree of care or skill impliedly represented by the terms of his undertaking, even a fiduciary does not guarantee the principal against incidental loss, nor does he undertake that he will make no errors or mistakes. * * * Nor do mere irregularities or carelessness render him liable for fraudulent breach of trust. * * * "
* * * * * *
'As to the N.A.S.D. 'suitability' rule (Art. III, Sec. 2, above quoted), upon which plaintiff relies in part in this case, the question arises whether it is the kind of rule upon which a civil action for damages by the customer can be based. Conceivably, a broker might honestly think that his 'ground' for believing his recommendation 'suitable' is 'reasonable', only to find himself overruled in a law suit and found guilty of fraud notwithstanding his good faith. As pointed out * * * in *Colonial,* * * * the practical consequences of allowing private federal damage suits based on rules of this kind, and involving judicial review of market judgments, would be considerable." Hecht v. Harris, Upham & Co., supra, at pages 430–431 (Dictum.)

■ Adopting the reasoning of *Hecht,* the Court must conclude that Art. III, Sec. 2 of the N.A.S.D. rules seek to regulate a much broader spectrum of broker activities than is envisioned by security regulations. Thus a violation of this N.A.S.D. rule *per se*

does not give rise to federal civil liability under the Securities Act.

■ Having determined that the rule in question does not give rise to an independent federal cause of action does not completely resolve the issue before the Court. Plaintiff contends that since the Court already has jurisdiction of this cause by virtue of the section 10(b) and rule 10b–5 allegations, it should retain pendent jurisdiction of a claim based upon common-law contract. He asks the Court to incorporate the N.A.S.D. rules into the contract between the broker-dealer and its customer. Courts should not lightly imply terms into private contracts. Only the most convincing policy arguments should persuade a court to indulge in the legal fiction of implying such contractual terms. Plaintiff provides the Court with no such arguments. The only policy the Court has to guide it is that of the Securities Act, and it has been demonstrated above that Art. III, Sec. 2, has much broader coverage than that envisioned by the Securities Act. Thus, the Court is not persuaded that the N.A.S.D. rules should be incorporated into customer-dealer contracts.

■ However, assuming that this action was properly brought under Section 10(b) and Rule 10b–5, the Court also has jurisdiction over the pendent claims of common-law negligence. See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Lorenz v. Watson, 258 F.Supp. 724 (E.D.Pa.1966). Thus, conceivably violations of Art. III, Sec. 2, would be admissible as evidence of such negligence.

Therefore, for the reasons set forth above, it is ordered, adjudged, and decreed that defendant's motion to dismiss that count of plaintiff's complaint predicated upon violations of Art. III, Sec. 2, of the N.A.S.D. rules be, and it is hereby, granted. But the Court reiterates that violations of Art. III, Sec. 2, would be admissible as evidence of negligence, if any.