Thomas C. **WELLS** and Marsha **Wells**, husband and wife, **Plaintiffs**,

v.

**BLYTHE & CO., INC.,** a corporation, **Defendant.**

No. C–71 712.

United States District Court, N. D. California.

Dec. 12, 1972.

Robert M. Dunne, Dunne, Phelps & Mills, San Francisco, Cal., for plaintiffs.

Girvan Peck and Marc P. Fairman, of Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

WOLLENBERG, District Judge.

This case involves an alleged failure by an employee of defendant to execute a sell order on a specific date. Subsequently the stock in question declined in value causing plaintiffs' alleged loss. Jurisdiction is predicated on diversity of citizenship and the existence of a federal question.

Defendant has moved for summary judgment of dismissal on the two causes of action based on diversity of citizenship on the grounds that the amount in controversy is less than $10,000. Summary judgment is sought as to the third cause of action, which is predicated upon the "suitability" rule of the National Association of Securities Dealers (N.A.S.D.), Rules of Fair Practice, Article III § 2, on the grounds that said rule cannot be the basis for a private action against a securities dealer under § 27 of the Securities and Exchange Act of 1934 (15 U.S.C. § 78aa).

DIVERSITY JURISDICTION

Defendant contends that diversity jurisdiction does not exist in the present case because plaintiffs' damages could not have exceeded $10,000, although $14,000 actual damages are alleged in the complaint. The basis for this argument is that even if defendant failed to execute an order to sell, plaintiffs knew or should have known of this failure within a period of time that would have enabled them to sell the stock without incurring a loss of $10,000.

■ This argument assumes the existence of contested facts as to when plaintiffs knew or should have known that the sale had not been executed, and what they could do to remedy the situation when they found out. Since the complaint alleges that $14,000 actual damages are in controversy and it does not appear to a legal certainty that the claim is really for less than the jurisdictional amount, the motion for summary judgment of dismissal as to the first and second causes of action is denied.

FEDERAL QUESTION

Section 27 of the '34 Act provides in relevant part:

"The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or rules and regulations thereunder . . . ."

Section 15A of the Securities Act, as amended (15 U.S.C. § 78o–3) authorizes the registration of national securities associations with the Securities and Exchange Commission provided that the prerequisites set out in subsection (b) of that section are met. Included among those prerequisites is the requirement that

"(8) the rules of the association are designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, . . . and, in general, to protect investors and the public interest, and to remove impediments to and perfect the mechanism of a free and open market . . . ."

Article III § 2 of the N.A.S.D. rules was adopted pursuant to this legislative mandate. It provides that:

"In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable ground for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs."

The issue presented on this motion for summary judgment is whether this rule can serve as the basis for an implied right of action under § 27.

The leading case in this area of securities law is Colonial Realty Corp. v. Bache & Co., 358 F.2d 178 (2d Cir.), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966). In that case, the Court was called upon to determine whether the requirement that a member of the New York Stock Exchange conduct his dealings in a manner "consistent with just and equitable principles of trade" within the meaning of §§ 6(b) and 15A(b)(8) of the Securities Act formed the basis for a federal right of action. The relevant language is embodied in Article XIV of the Constitution of the New York Stock Exchange and of Article I § 2(a) of the By-Laws, as well as in Article III, § 1 of the Rules of Fair Practice of the N.A.S.D.

The Court began with the proposition that

"the judicial recognition and enforcement of a private remedy not expressly afforded by the Securities Exchange Act is predicated on the duty of the courts 'to make effective the congressional purpose' represented in 'the statute and the federal policy which it has adopted.' J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct.

1555, 1560, 12 L.Ed.2d 423 (1964)." (358 F.2d at 181).

The Court went on to suggest that when a stock exchange rule plays an integral part in SEC regulation or imposes an explicit duty unknown to the common law the case for implication of a federal right would be strongest. Even in those cases, however, "the party urging implication of a federal liability [carries] a considerably heavier burden of persuasion than when the violation is of a statute or an SEC regulation." (358 F.2d at 182) The Court went on to hold that the general requirement of conduct consistent with just and equitable principles of trade failed to meet the above criteria.

This Court was the first to consider whether the suitability rule is the kind of rule upon which a civil action for damages by a customer can be based. In Hecht v. Harris, Upham & Co., 283 F.Supp. 417 (N.D.Cal.1968), aff'd on other grounds, 430 F.2d 1202 (9th Cir. 1970), the Court noted that the Securities Acts are essentially directed at fraud, rather than against negligence or errors of judgment on the part of the broker, and indicated that, as pointed out in *Colonial Realty*, "the practical consequences of allowing private federal damage suits based on rules of this kind, and involving judicial review of market judgments, would be considerable." (283 F.Supp. at 431) But since the

Court ruled in defendant's favor on grounds of estoppel and waiver, it did not rule directly on the suitability issue.

Following *Hecht*, the Court in Mercury Investment Co. v. A. G. Edwards & Sons, 295 F.Supp. 1160 (S.D.Tex.1969) adopted the dictum of *Hecht* and squarely held that the N.A.S.D., Art. III, § 2 does not *per se* give rise to a federal civil liability under the Securities Act.

Plaintiff has not cited, and the Court has not found any authority contrary to the decision in *Mercury Investment Co.* Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135, 143 (7th Cir.), cert. denied 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969), which held that Rule 405 [1]—another form of suitability rule—of the New York Stock Exchange may be the basis of a federal cause of action where the facts alleged are tantamount to fraud on the dealer's customers is not to the contrary. Without considering the differences between N.Y.S.E. Rule 405 and N.A.S.D. Art. III § 2, it is sufficient to note that the Court in *Buttrey* expressly declared that "we do not decide that an alleged violation of Rule 405 is *per se* actionable." (410 F.2d at 142)

In the case at bench, federal jurisdiction is predicated on the third cause of action, which incorporates the first by reference. Neither alleges anything more than negligent failure to counsel plaintiffs to sell their stock.[2]

---

1. "Every member organization is required through a general partner or an officer who is a holder of voting stock to

(1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

(2) Supervise diligently all accounts handled by registered representatives of the organization.

(3) Specifically approve the opening of an account prior to or promptly after the completion of any transaction for the account of or with a customer, provided, however, that in the case of branch offices, the opening of an account for a customer may be approved by the manager of such branch office but the action of such branch office manager shall within a reasonable time be approved by a general partner or an officer who is a holder of voting stock in the organization. The member, general partner or officer approving the opening of the account shall, prior to giving his approval, be personally informed as to the essential facts relative to the customer and to the nature of the proposed account and shall indicate his approval in writing on a document which is a part of the permanent records of his office or organization."

2. The second cause of action alleges wilful and malicious failure to execute the sale order in support of a claim for $100,000 punitive damages.

Since the general policies to be furthered by association rules under § 15A(b)(8) have been held insufficient to state a federal cause of action in *Colonial Realty*, and the only relevant specific prohibition—that against fraudulent and manipulative acts and practices—is not involved in the present case, the Court hereby follows the reasoning of *Hecht* and the holding of *Mercury Investment Co.*, in declaring that a violation of Article III § 2 of the N.A.S.D. Rules of Fair Practice does not *per se* create a Federal cause of action. The motion for summary judgment of dismissal as to the third cause of action is, therefore, granted.